Good morning. May it please the Court. Terry Budd, along with my colleague Andrew Shublow, appearing for Enigma Software Group, which I'll refer to as Enigma or ESG in the proceedings. I'd like to reserve four minutes, please. Okay. Keep track of your time, though. Okay. What time? What amount did you say? Four minutes, please. Okay. To be honest, I'd like to make clear that the core dispute between Malwarebytes over its blocking Enigma's products did not start from some well-researched, good-faith decision by Malwarebytes. To the contrary, the core decision by Malwarebytes was one of several steps by Malwarebytes to work in collaboration with one of its sales representatives that had paid commissions that was engaged in a smear campaign against Enigma to hurt it and to build Malwarebytes and to build the bleeping compute of profits. What I'd like to do is briefly outline some of the key allegations and then highlight why the claims for Lanham Act business towards, particularly in a Rule 12b6 setting, should not have been dismissed. The background here is Bleepy Computer was working for many years with Malwarebytes in different capacities, including as a commission-paid sales representative. They had various agreements, including a confidential agreement, which they shared and agreed to share customer information, proprietary information, product information, research. And along the way, Bleepy Computer began a smear campaign that was directed at Enigma that, in fact, told people to uninstall Enigma after various disparaging, untrue remarks and actually told them to go ahead and install Malwarebytes instead. What is the relationship with Bleepy Computer and Malwarebytes? I think it's described as an associate of some sort. I don't quite understand that. So Bleepy Computer was a sales representative, its own company, but as a hired independent sales representative getting paid commissions by Malwarebytes for sales that Bleepy Computer could bring in to Malwarebytes. And the two CEOs knew each other, which we know from emails that they exchanged behind the scenes along the course of the conducting of this smear campaign by Bleepy Computer and Malwarebytes assisting Bleepy Computer. And in fact, the smear campaign led to Enigma in the Southern District of New York filing a litigation against Bleepy Computer. And in that litigation, subpoenas were issued to Malwarebytes for internal documents and for deposition testimony of executives of Malwarebytes, too, in a way to specifically target and hurt Enigma. One week before the subpoena response was due for the documents, after eight years of never blocking Enigma's products before, never labeling them bad or problematic, Malwarebytes, in connection with its efforts, we contend and plead in Bleepy Computer's defense of the litigation in New York and in Bleepy Computer's trying to counterattack Enigma, Malwarebytes started blocking Enigma's products. And when I say blocking, I'm talking about Malwarebytes reached into the computers of users who had Malwarebytes and tried to use Spy Hunter and zapped the Spy Hunter program. So what's... Okay. Counsel, let me ask you, in terms of your allegations, if we assume for purposes of argument that the district court correctly took judicial notice of the things that it took judicial notice of, is that fatal to your claim here? Not at all, because none of the documents or materials that the court took judicial notice of wipe out, erase, or make any of our allegations untrue. What the court took judicial notice of doesn't change anything, and particularly in Rule 12e6 doesn't change anything, because what those materials were, quite frankly, is Malwarebytes' own spin on facts that it wants to present literally as a trial defense. So although we believe procedurally and have raised the issue that judicial notice should not have been taken, it doesn't change the outcome. I could almost say I don't care because it's important. So if we agree with you on the Lanham Act, the sufficiency of the pleading, then we don't need to even, without regard to the items that he took judicial notice of, we don't have to get to that. I agree, Your Honor. I agree. You would, you can We can just bypass judicial notice. If we otherwise agree with you on those other allegations. Yes, exactly. I'm sorry if I wasn't clear. Counsel, my question is, even if the story you're painting is correct that Malwarebytes did this for a purely anti-competitive reason, doesn't it matter if it's just a question of opinion? How is it protected? It's not a question of opinion, Your Honor, because Malwarebytes was calling Enigma in false labeling under the Lanham Act and false advertising. It's very competitor, Enigma, making anti-malware products that protect people from threats and viruses. Malwarebytes was calling Enigma's products threats. That's a word that Malwarebytes chose itself to use. So just to back up, do you agree that whether or not Malwarebytes did this for an anti-competitive reason is irrelevant to the Lanham Act claim? Well, I would not quite say it's irrelevant. I would say that the false advertising is proven under the Lanham Act by the very statement's malicious threat that it falsely called the Enigma products. The anti-competitive dynamic, the motive, if you will, mens rea, I would say, is part of what we believe the jury is entitled to hear. In free markets, competition is fine, and even sometimes aggressive competition is fine. But if Bayer Aspirin says to the public, Advil not only doesn't stop headaches, it causes headaches, it's akin to Malwarebytes saying that Enigma's anti-malware products, which in fact beat Malwarebytes over time in independent testing, not only doesn't prevent viruses and malware or prevent you from being attacked as a computer user in your personal security, it is in fact a malware or a virus. And we know that that's what they were saying because users complained, and we have quotes in our complaint that show that the users said, wait, Malwarebytes is calling Spy Hunter malware. But isn't whether or not a program is malware, isn't that a subjective opinion? No, because in cybersecurity markets, when something is malware, it is a threat. Again, the word Malwarebytes uses itself to disrupting the system, the access, the authorized use of it. But would every company agree that every program is malware or not malware? Or would there be edge cases where some people would agree it is malware and some people wouldn't? Particularly with respect to malware, slightly different than potentially on one of the programs, particularly with respect to malware, there are collective research information that groups put out and that antivirus software manufacturers share that define what are the malwares that are hitting you across the globe, which are the ones that, not an antivirus or semantic, as it also is known, or SOPHIS or McAfee, they all have combined research that everybody is using to come to a consensus on what's actually malware. So it's not just a subjective opinion, and in fact, it is a factual, concrete statement that can be disproved, just like Enigma can disprove that it was not malware or a threat when Malwarebytes was calling it a threat. How would you disprove, if so, if Malwarebytes calls something a malware, who would they appeal to to say it's not malware? Who could you appeal to to say it's not malware? You could, number one, do your own testing to show that it's not hacking into a computer, it's not stealing information, it's not operating on a user's computer without the consent of the user, it's not exceeding the authority it's been granted, and at the same time, that malware program, if it's a program that somebody says, hey, wait, I've been called malware, that's not fair, they could come forward, which happens from time to time, and demonstrate to whatever antivirus program, like Malwarebytes, is listing them, that that's an unfair listing, and that happens back and forth in the cybersecurity markets all the time. That's my concern. Then you want to appeal to courts to then decide what's malware or not. That just seems, it seems like the market is working on that. No, because, to begin with, Malwarebytes, we have pled, and would demonstrate at trial, knowingly called Enigma malware when they knew it was not malware under their own definitions. We don't need to go to some universal arbiter, and in fact, that will be something that Malwarebytes can present to the jury. They can try to demonstrate to the jury that they were justified in their opinion or their statements. They could try to present to the jury that, in fact, their designations were done in good faith. We submit that they were not done in good faith. Before you slip into all of your rebuttal time, I want to change subjects on one question. Thank you. Which is, why was the case filed in New York? So, the case originally was filed in connection with the case that was pending in New York against Bleeping Computer, and it was filed as a case where there was proper jurisdiction, as we contend in our briefing, and as a related case, and Judge Engelmeyer from the Southern District agreed it was a related case and accepted the case on his docket. At one of the early conferences on the motion to dismiss by Malwarebytes in New York, in literally the week of, the night before the conference, the case with Bleeping Computer settled, and so the case stayed briefly in New York, but one of the arguments Malwarebytes had made was for nonconvenience because they contended their relevant witnesses were in the San Francisco area. And Judge Engelmeyer didn't rule on jurisdiction, expressly said he was not, didn't rule on the substantive legal arguments. He simply granted the FNC, which is why the case came here. I am. I am. Go ahead. Could I give him an additional minute? Of course. Go for it. So I have a question that I, so I am baffled by something that none of the parties have addressed, and neither did the District Court. So, and this goes to your state law claims that were transferred. This case, of course, was transferred to California, to the District Court of California. And we know under Van Dusen that we apply, if there's personal jurisdiction in New York over, if there was personal jurisdiction, that we apply the substantive law of the transferer as opposed to the transferee jurisdiction. Right? But substantive law also includes choice of law. And there's been no discussion whatsoever by you or your friend about what, under New York choice of law, assuming there's personal jurisdiction in New York, under New York choice of law rules, what substantive law would govern these state law claims? My understanding, Your Honor, and I apologize it's not in the briefing by either of the parties, that we didn't anticipate either side that question. But my understanding from my general experience with New York law is that the choice of law would still select New York law, particularly since we have users in New York that were being harmed and damaged by Malwarebytes, illegal blocking. We have lots of contacts of Malwarebytes in New York. And we have a case in which the court had already agreed this is a case proper to proceed under New York. In fact, in the appellate briefing last go-around, Malwarebytes itself cited New York law as controlling. So if we assume, assuming we disagree with you about personal jurisdiction and so we have to apply the law under Van Dusen of the transferee jurisdiction, in this case California, under California choice of law rules, where does that leave us? Well, under California choice of law rules, I would say that if the court determines California law should apply, it puts us in a position where we should be granted leave to amend to assert our claims under California law so we don't have any problems down the road with our pleadings and later procedural matters and we should be entitled to proceed. I mean, is it still possible that under California choice of law rules you still might end up with New York's substance of law? Well, under California choice of law rules, if California law is concluded by the court to apply, the claims are similar enough that we still have valid state law claims for unfair trade practices under the UCL or for torturous interference. Okay. I'm sorry for... No, that's okay. We'll give you some time for rebuttal. Thank you. If I might just use a little time on rebuttal, I realize... Yeah, we'll give you your time back. Thank you. I accept responsibility for stealing your time. It's important. Thank you. Mr. Cava? Your Honor, I'm getting a notice that, and I'm having a little bit of a hard time hearing you. Am I coming across clearly? Yes, we hear you well. Okay. Thank you. Moaz Cava on behalf of Malwarebytes. May it please the court. I think we have to start where Judge Bumate was asking a series of questions, which is there are really three statements at issue here by Enigma. They are the characterization of a potentially unwanted program, the use of the word threat, and the use of the word malicious. Those are the three. And where the court must start under this court's precedent and under the Second Circuit's precedent is, are these statements a fact in that are they, one, specific and measurable, and two, capable of being proved false? This comes from the Ninth Circuit's decision in Coastal Abstract. And I don't believe that a lot of the discussion that we just had around, well, they call it malware. And what does malware mean? And is there a distinction? And can that be appealed? Actually, the word malware is not used here, other than as— The word malicious is. Your Honor, that is correct. But— For malware bytes to call somebody malicious in the context of a computer application seems to have some substance. If I called something malicious, maybe not so much, because I don't know anything about computers, and everybody kind of knows that. But if malware bytes calls somebody malicious, that is meant to have some meaning. And I think malware intended it. Malware bytes intended it to have meaning. Your Honor, I think that the fact that word has meaning often comes up in these cases. Words, of course, have meaning. You have the case, the Wynn v. Chanos case, that this court, the Ninth Circuit, affirmed dismissal of. And that was at an investor conference. A professional investor speaking to other investors said investing in Wynn would be a, quote, risk under the Foreign Corrupt Practices Act. The court nevertheless said that is not an actionable statement of provable fact. In this case, as Enigma admits, it's incorporated in their second amended complaint, paragraph 118 to 120. They include screenshots. The screenshots specifically say non-malware. Then we get to— Which is actually sort of indicative itself, because why would it say not malware if it didn't understand that the use of the terms that it did use suggested that it was malware? Well, because Malwarebytes actually publishes its criteria for the considerations that go into its ranking, its characterization of programs. Does it publish that right next to the use of the terms threat and malicious, or do you have to dig for it? Well, it's published in Malwarebytes— You have to dig for it. Say yes to that question. You have to dig for it. I would agree, Your Honor. It is not right next to— So telling me that they publish this publicly isn't really useful for somebody who gets this message that they're dealing with something that's a threat and malicious. Well, Your Honor, I don't believe that any of the case law requires geographic proximity. I think what the publication— So why is Malwarebytes so eager to say not malware to clarify what it says? Well, no, what it says is it pulls up and it says potentially unwanted program. It certainly uses a word. It's an unadorned word, threat, just like I would submit that the word risk is in the attorney's competence were in Underwager and Partington. But what all of these cases show, all of these cases that we have cited shows, is that the words have to be specific and measurable, and they have to be provable of being false. Even in this complaint, Your Honor, there is no set of, here is the verifiably true definition, and here's why we don't need it. In fact, what the complaint does at some length is go through why they disagree with how we characterize what is the criteria that we consider. Suppose it could be established that your client's own software would qualify as malicious or as a threat or as potentially unwanted under the standards that Malwarebytes purports to apply to Enigma's software, and that Malwarebytes knows that. Well, Enigma has its own standards that it applies, and it can. That's not the question I posed. Suppose it could be established that your client knows that its own software would trip over the same standards it's using to justify the application of these terms to Enigma's software. Would that matter? I don't believe so. It still would not establish a Lanham Act claim or a GBL claim because the Lanham Act and GBL under this court's law, and like I said, the Second Circuit's law in the ONY or the ONI case, makes clear you have to start with statements that are verifiable assertions of fact. And the reason I went to the criteria, Your Honor, is one, it goes to Judge Baker's point, you actually don't need to look at what was judicially noticed. The criteria were attached to the actual complaint and quoted in the complaint. It's Excerpts of Record, page 387 and 388, which is Exhibit 14, to the plaintiff's own second amended complaint. And it says quite plainly, we use our judgment. While we work hard not to, sometimes we get it wrong. This is plainly showing that these are not definitive, verifiable facts, but these are statements of opinion. And even if you get past that first threshold, which again, plaintiff in this case has not identified for us the objective factual definition and how they don't meet that objective factual definition, because there is no definition here for threats or for potentially unwanted threats. And Counsel, what's your response to your colleague's accusation that malware calling Enigma, I'm sorry, malware by its calling Enigma malware doesn't even fit its own, malware by its own definition of malware. And it knew that and it did it on purpose. I think, but I think that's exactly part of the point. There is a definition. Like I said, we don't call it malware, but we do call it potentially unwanted. We call it malicious. We call it a threat under accepting the allegations is true. Right. Your Honor. But those words are then explained. And what they claim is not that we are, that there is some other factual definition here. They're now asking courts to get involved in deciding whether one, our definition is right to how we're applying our definition. Three, whether somebody else would apply this definition the same way as we are applying that definition. As this court has said, and others in the context of Lanham Act and defamation claims, the courts are ill suited to begin policing whose definition is right and whether or not the definition is properly applied, because the next logical step would be, well, we actually just don't even like malware rights definition. We think it's too favorable to them and unfavorable to us. And then you get another claim. And this happens, Your Honor, of course, with ratings. All the time it happens with ratings. The Michelin Guide offers opinions and views and sometimes quite extreme language about its views on restaurants. The Better Business Bureau offers rankings and its opinions and views. And I think that up and down we see, and which is why I was pointing out the Wynn case, which is admittedly an unpublished disposition from this court. But the Wynn case, I thought, was an interesting one because in the context of financial transactions, it says some investment would be a risk under the FCPA, which is quite a charge to make. That's an actual charge of a law potentially being violated. And again, I think the court need not only accept our argument for it, if the court looks at the complaint. The complaint itself uses language of subjectivity. It claims our criteria and our application of that criteria is, quote, subjective. Second amended complaint, paragraph 13. Facially vague. Second amended complaint, paragraph 195. Our own coding, selection, and internal decision making. Vague and unbounded criteria. Subjective characteristics. This is the language all over the second amended complaint. I think paragraphs 12 and 13 are very good examples of where enigma is admitting the subjectivity. I think in the face of those admissions, along with just the use of these words generally, I don't see how we get out of the land where this court, while finding some statements potentially actionable in ERICS, said the application of even scientific criteria requires subjectivity. And that takes you out of Lanham Act land. That was the ERICS discussion at page 1121, 985 F3 at 1121, where the court says, there is an inherently subjective element in deciding which scientific and objective criteria to consider. And selecting those criteria involves subjective decision making. That brings me back to the question I was trying to pose before, which is Malwarebytes' willingness to apply its own criteria to its own product. Indeed, there could be some question if it turns out that your client's own product would fail the test, there could be some question as to whether this really reflects an opinion. Because is Malwarebytes labeling its own software malicious or a threat and telling the world that? Well, Your Honor, I actually think it would demonstrate that these are opinions. Because what it would show is that in our opinion, our product does not satisfy what even plaintiff claims are vague and subjective criteria, whereas other products do. And yet you're willing to identify your competitor's client, the competitor's product as a threat and as malicious, while not applying those terms to your own client's product. That suggests it's not really an opinion, does it? Because your client doesn't mean to be selling products that are malicious and are threats to their customers. Well, Your Honor, I think certainly we don't mean to be selling products that are malicious or threats. I think it actually gets to an important point, which is the allegations. Your hypothetical has not actually been alleged here. But even if it were, Your Honor, the practical reality is you have to download our product and you can buy it. You get a free version or you get a paid for version. And it's not just Malwarebytes. Companies all over look at products that consumers may download onto their computer and offer them an option of saying, hey, we think there is something here. We think there is something that doesn't smell right to us here. You get to decide whether you want to quarantine it, you want to block it, you want to uninstall it, you want to uninstall our product instead. And so I don't think this is this is not a system set up to be targeting a competitor or not a competitor. This is criteria that we publish. So necessarily subjective criteria. Words that are used in that criteria like that. That's where that's where that's where I've lost. What makes it necessarily subjective? Because the criteria, Your Honor, includes, for example, diminishes user experience. It is impossible to say factually, how do you test that? Whether it enhances, diminishes or does nothing to a user's experience. It's subjective. Another criteria, Your Honor, is excessive distribution or obtrusive distribution. These are words that sound entirely in someone making a judgment. Counsel, what's your response to the opposing counsel's view that at least in this field, there's a consensus on what it means to be malware and that, you know, that malware by its application of that violates that consensus? Well, Your Honor, my first response is there is actually no consensus identified in the complaint. And my second response is, nor have they alleged that their product does not satisfy or does satisfy that consensus. And of course, that's expected, Your Honor, because these are not words that are being used, that are being used, that lend themselves to a kind of binary decision making, which was what we found in the in the Eric's case where the court said some some phrasing may be actionable. The court went was very clear that that that were that concerned characterizations that were binary. You either have the registration or you didn't have the registration. You either did satisfy the GMP practice or you didn't. Those are binary, easy, true, false questions that in those cases, even in Eric's, the court said maybe just maybe that would be actionable. And, Your Honor, I want to make just one point, which is two points, really. But in the 20 seconds I have left, even once you get caught first, if you if it's a statement of opinion, if it is not the kind of thing that creates liability under the Lanham Act, under the GBL or under state law, that's the only case from the Second Circuit where Judge Lynch was very clear. If it's a protected statement of opinion, there is no liability under statutory or common law. And even in New York, accepting their argument that New York law would apply. So I think that's first that that if you can't get past that gate, there are no claims. The second point I would make, Your Honor, is even if they can get past that gate, there then becomes a serious question about whether this is commercial speech subject to the Lanham Act and the New York GBL claims. And because as we lay out in our brief, we are not. When we identify something as potentially unwanted, the consumer has already downloaded the program. We're not selling the consumer anything. And as you want to wrap up, counsel. And as the plaintiff admits, they get the exact same characterization, whether it is a free program or a paid program. So there's a very fundamental problem. Even have one more question for you, actually. I have the same question for you that I asked your friend. So assuming that California law, New York law applies for the state law claims. What's this under New York choice of law rules? Where does that leave us? We would say, Your Honor, that the GBL claim would fail. There is no connection between either of the parties in New York. Right. So ESG actually is even under New York choice of law rules. So I'm not so under New York choice of law rules. I understand under New York. I understand that. But in order to get into New York choice of law land, Your Honor, there would need to be some basis to assert New York law. So let's say that we are in New York or somehow the personal jurisdiction would have been proper in New York. I think that's. But I'm assuming that. Right. I'm assuming that. I mean, yeah, yeah. No, we have to assume I'm just I'm assuming that we have personal jurisdiction in New York. And we're applying the law of the transfer or jurisdiction. But then the first question we ask, then, is what are the what is the choice of law rules of that jurisdiction, as opposed to just jumping to the substantive law of that jurisdiction? That's fair enough. And I would say, Your Honor, you're right that that specific issue was not addressed by either party or by the. Do you have any views on that? OK, well, we would say that we would say that because one of the questions in choice of law is when you get to the fundamental claims, is there a conflict such that there is one or the other that is necessary? We would say. And I think what the court found here is there is on the state law, common law claims. There is no conflict. They lose under either New York or California law. OK, then under California choice of law rules, the same. All right. Sorry. The same as the same underlying common law claims. Correct. Thank you, counsel. We'll give you three minutes. Just a couple of quick points. It's set forth in the Second Amendment complaint that malware bytes purposely, by its design, had a default programming to make any of the programs that they listed, including SpyHunter and RegHunter, automatically blocked. And malware bytes in their materials said, treat pups as malware. That's in the complaint. And malware bytes did not give users an effective or reasonable way to understand how to get out of the blocking. And in fact, in the example we put in the SAC, malware bytes listed SpyHunter 73 times. So a user would have to keep going to each of the 73 ones to try to get around the blocking. This was not a case of real choice for the users. Well, it wasn't the choice in installing malware bytes in the first place? Well, they could have malware bytes. They could have SpyHunter. They could have SpyHunter first. And if they tried to add malware bytes, it would cancel and kill SpyHunter. Malware bytes own CEO, and malware bytes in its papers have recommended what they call layered protection. The CEO compared it to seatbelts and an airbag, because no anti-malware software can identify all the time every malware going across the globe. My problem with that, it just seems like that's like an antitrust issue or anti-competitivist issue, not a LANDMAP issue. No, because there are anti-competitive issues here, for example, under the unfair trade practices. But in the LANDMAP claim, they have stated falsely that we're a threat to people, that we're the opposite of what we actually are. And the notion of looking at the cases that Mr. Cabo points to, like a Michelin Guide review, Michelin Guide doesn't break the plate glass windows of a restaurant and shut it down from serving customers. Malware bytes went in and broke the SpyHunter program. That's a big difference. I don't know, like in credit ratings, for example, if you rate a bond, you know, triple B, it's going to kill that bond. And I think it's pretty clear that that's an opinion. Well, and when malware bytes holds itself out as an expert and tells people to rely upon it, even has a remove all button when they give you a list of hundreds and hundreds of detections and they put their competitor in that list, then they should have a good faith, real basis for adding their competitor. But here, as Judge Clifton pointed out, the record could easily show that they knew, in fact, that was false. False speech is not protected. And as importantly, where there's a dispute, whether a statement is an opinion or a factual statement, under the Fotomax Irwin decision that Judge Clifton decided some time ago, that's a question that goes past the motion to dismiss and goes to the fact finders. Thank you all very much for your time.  Next up, we have IV versus AstraZeneca Pharmaceuticals LP.
judges: CLIFTON, BUMATAY, Baker